IN THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY, MARYLAND

| | |
|---|---|
| ANDREW S. ADAMS<br>12 Linstead Road<br>Severna Park, Maryland 21146 | *<br>*<br>* |
| Plaintiff, | * |
| v. | *   Case No. C2-C-11-163458 |
| ANNE ARUNDEL COUNTY PUBLIC<br>SCHOOLS | *<br>* |
| Serve On: | *<br>* |
| Kevin M. Maxwell, Ph.D.<br>Superintendent<br>Anne Arundel County Public Schools<br>2644 Riva Road<br>Annapolis, Maryland 21401 | *<br>*<br>*<br>* |
| Defendant. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**COMPLAINT AND JURY DEMAND**

Now comes Plaintiff, Andrew S. Adams, by and through counsel, and for his Complaint against Defendant, Anne Arundel County Public Schools ("AACPS") states as follows:

**JURISDICTION AND VENUE**

1.    This is a proceeding for damages and injunctive relief to redress the deprivation of rights secured to Mr. Adams by the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. Sections 2601 et seq., the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. Sections 12101 et seq., Title 20 of Maryland's State Government Article ("Title 20"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e et seq. ("Title VII"), the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Maryland Declaration of Rights, and for intentional infliction of emotional distress and for negligent supervision and retention under the tort law of the State of Maryland.

2011 AUG 17 A 8:49  FILED

2.     Plaintiff, Andrew S. Adams, a male and resident of the State of Maryland, filed a charge of discrimination against defendant AACPS with the Equal Employment Opportunity Commission ("EEOC") on or about May 12, 2010, complaining of the acts of disability discrimination, retaliation for exercising his right to a reasonable accommodation, and sex discrimination, all alleged herein.

3.     On or about May 31, 2011, more than 180 days having elapsed since the filing of his charge, the EEOC issued plaintiff a notice informing him of his right to sue defendant in court.

4.     Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII, the ADA, and Title 20.

5.     As the unlawful employment practices complained of herein occurred within Anne Arundel County, Maryland, venue is proper.

## PARTIES

6.     At all times relevant hereto, Plaintiff, Andrew S. Adams, a male, has resided at 12 Linstead Road, Severna Park, Maryland 21146, and has been a resident of the State of Maryland. Plaintiff is a person entitled to protection pursuant to the provisions of 42 U.S.C. Section 12111(8) and pursuant to 29 U.S.C. Section 2611(2)(a) as an employee within the meaning of the FMLA. Plaintiff is an individual with a disability within the meaning of Title 20.

7.     At all times relevant hereto, AACPS, a county agency organized and operating pursuant to the laws of the State of Maryland, is and at all times mentioned herein an employer within the meaning of Title VII, Title 20, and 42 U.S.C. Section 12102(5)(A). Defendant was the "employer" of Mr. Adams within the meaning of 29 U.S.C. Section 2611(4)(a).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.  Mr. Adams began working for AACPS in 1979 as an Industrial Arts Teacher. He worked as an Industrial Arts/ Technology Education Teacher in a variety of schools in Anne Arundel County. After briefly leaving AACPS in 1999 to work for Montgomery County as a resource teacher for technology education, Mr. Adams returned to AACPS that same year. In 2000, Mr. Adams became an Assistant Principal. He was initially assigned to Brooklyn Park Middle School, but was transferred for a year to Old Mill Middle North, after which he was transferred to MacArthur Middle School in 2003.

9.  During the term of Mr. Adams' employment with AACPS, Mr. Adams was diagnosed with high blood pressure, chronic anxiety, and stress in February 2010. Mr. Adams was prescribed Ativan to relieve his anxiety. In March 2010, Mr. Adams was diagnosed with chronic Acute Stress Disorder and began taking Diovan to treat his high blood pressure. In May 2010, Mr. Adams was diagnosed with a chronic post-traumatic stress disorder. These impairments substantially limit Mr. Adams' ability to think, work, sleep, and concentrate.

10. Mr. Adams took medical leave from February 25, 2010 until March 2, 2010 as a result of his chronic serious medical conditions. Mr. Adams notified Reginald Farrare, Principal, of the need for leave on February 25, 2010 via e-mail, providing a doctor note from Kim Bondurant, M.D. and a description of his medical condition. AACPS made no additional inquiries to deem whether FMLA leave was appropriate.

11. On the morning that Mr. Adams returned from his medical leave, he suffered an acute panic attack at work. Mr. Adams was in a meeting with Sara Eger, Annual Yearly Progress Specialist, when he had difficulty breathing and fell to the floor, gasping for breath. He asked Ms. Eger to get the school nurse. Ms. Eger left and informed Mr. Farrare of Mr. Adams'

condition. Mr. Farrare then entered the office, closed the door, and began verbally attacking Mr. Adams, stating, "I don't know what your problem is . . . The school is in enough chaos without you." Mr. Farrare did not allow Mr. Adams to seek medical treatment with the school nurse and ordered him to leave the building. Mr. Adams then left work to seek medical treatment with Dr. Bondurant. Dr. Bondurant determined that Mr. Adams was unable to work and ordered him on medical leave until March 8, 2010. Dr. Bondurant also instructed Mr. Adams that a transfer to a different work location would ease his symptoms. Dr. Bondurant also referred Mr. Adams to a psychiatrist and Mr. Adams then began treating with Lawrence W. Adler, M.D. Mr. Adams notified Mr. Farrare of the need for leave via telephone on that same date and subsequently provided a supporting doctor note to Deanna Natarian, Mr. Farrare's Secretary.

12. On the morning Mr. Adams returned from his medical leave, Jolyn Davis (Assistant Principal), Rotunda Floyd-Cooper (Assistant Principal), Ms. Eager, Ms. Natarian, and Mr. Farrare entered Mr. Adams' office. Mr. Farrare had informed the others that the purpose of going to see Mr. Adams was to show support. However, once the door was shut, Mr. Farrare immediately verbally attacked Mr. Adams. Mr. Farrare stated that Mr. Adams "was hurting the team because he did not communicate while he was out." This comment shows that AACPS was considering Mr. Adams' disability and medical leave in evaluating his job performance, suggesting that Mr. Adams should have performed work even when he medically was unable to do so. Mr. Adams then complained about the retaliatory and discriminatory behavior.

13. Within a few days of Mr. Adams' return from medical leave, his complaints about the discriminatory behavior, and his request for a transfer as a reasonable accommodation, AACPS retaliated against him by reopening an investigation into a previously resolved incident from January 2010. In January 2010, Mr. Adams was involved in an incident in which a student

verbally threatened him while violently flailing her arms. Rebecca Bene, a teacher who saw the incident, described what she witnessed in a January 22, 2010 Memorandum, stating, "I observed Mr. Adams facing the girl with both his arms straight down at his sides as he stepped in front of her to block her each time she turned, so that she could not get past him. Their bodies were close but not touching . . . Mr. Adams was talking to the female student in a controlled voice that I was unable to hear clearly from where I stood, and his face had a calm but alert expression as he continued to talk to the girl." Ms. Bene went on to state that the student "started to flail her arms about her like someone who is trying to keep someone away . . . Mr. Adams raised his hands and used them to guide her forearms downwards. At that point, Officer Marcus appeared and the girl was escorted into the stairwell and out of my view." Ms. Bene described the student's behavior as "less like a child having a tantrum and more like someone having a violent outburst. The student definitely was out of control; Mr. Adams definitely was not." The student involved in the incident filed a Student Incident Report, and AACPS investigated, including reviewing incident reports from other students and faculty members and the Memorandum provided by Ms. Bene. On February 4, 2010, the Board of Education unanimously voted that there were no grounds for the allegations made against him. Even further, the Anne Arundel County Department of Social Services ("AADSS") conducted its own investigation and determined on March 19, 2010 that it "completed its Child Protective Services Intake Investigation regarding your family" and "the validity of the allegation of Child Physical Abuse regarding Jordan Callahan is ruled **Ruled Out**." (Emphasis in original). Yet even after AACPS' own investigation deemed the allegations meritless and AADSS ruled out any validity to the allegations, AACPS persisted in reopening the investigation to retaliate and discriminate against Mr. Adams. Mr. Adams was previously cleared of any wrongdoing by two separate investigations, including one by an independent

county agency, and accordingly the only basis to continue pursuing the allegations was to discriminate and retaliate against Mr. Adams.

14. The stress from the discrimination and retaliation worsened Mr. Adams' symptoms. His symptoms became more difficult to control, affecting his ability to carry out his usual employment duties. On March 22, 2010, Dr. Adler diagnosed Mr. Adams with Acute Stress Disorder and ordered him on medical leave until July 28, 2010.[1] Mr. Adams provided AACPS with a note from Dr. Adler. Dr. Adler's note also instructed that Mr. Adams' disability still required an accommodation, stating, "[H]e will require assignment to another school. His current placement is a trigger for panic attacks and other manifestations of his illness."

15. While AACPS continued to ignore Mr. Adams' request for a reasonable accommodation, his impairments worsened. On May 5, 2010, Mr. Adams supplemented his accommodation request with additional paperwork from Dr. Adler. Dr. Adler's paperwork stated that Mr. Adams could not perform "[a]ll functions which require employee to be at site of psychological trauma . . . Acute stress disorder is evolved into post-traumatic stress disorder. Symptoms are present in all domains of illness: intrusive recollections, nightmares, reliving of trauma, avoidance of places and persons associated with trauma, anxiety attacks, insomnia, irritability and depersonalizations . . . employee must be reassigned to another location." (emphasis in original).

16. Instead of responding to Mr. Adams' multiple requests for a reasonable accommodation, AACPS ordered Mr. Adams to attend a pre-discipline conference on May 24, 2010 while Mr. Adams was on FLMA leave. AACPS interfered with Mr. Adams' rights to his leave by requiring him to attend this conference during his leave. The sole focus of the

---

[1] Mr. Adams' FMLA leave concluded on June 30, 2010. AACPS switched his leave from FMLA leave to administrative leave with pay at that time, even though Mr. Adams was still medically unable to work throughout the period of administrative leave.

conference was the previously resolved incident from January 2010, an incident in which Mr. Adams was previously cleared of any wrongdoing by two separate investigations, including one by an independent county agency and the other by AACPS. On May 24, 2010, Mr. Adams received a written letter disciplining him for the January 19, 2010 incident. This discipline came approximately four months after the incident and after Mr. Adams was already cleared twice, and accordingly the only basis for the allegations was to discriminate and retaliate against Mr. Adams.

17. The retaliation and discrimination escalated again on June 18, 2010, when AACPS required Mr. Adams to attend medical examinations. AACPS allegedly scheduled the medical examination "[d]ue to concerns regarding your fitness to perform your duties." While Mr. Adams was currently on FMLA leave, AACPS did not have any reasonable belief or evidence that Mr. Adams' disability would not allow him to perform his essential job functions with accommodation upon his return to work after his leave. Yet AACPS required Mr. Adams to attend three medical evaluations with Anthony B. Wolff, Ph.D., Spectrum Behavioral health, on June 30, July 19, and July 21, 2010. These medical examinations violate the restrictions on medical inquiries of on-the-job employees as set out in the Americans with Disabilities Act ("ADA").

18. On July 19, 2010, Mr. Adams filed a Charge of Discrimination with the EEOC.

19. On July 28, 2010, Dr. Adler released Mr. Adams from treatment. On that same date, Dr. Wolff determined, "Mr. Adams's psychological profile is nonsuggestive of any type of risk or dangerousness . . . There is no evidence in Mr. Adams's profile of any tendency toward violence, aggressiveness, or indeed anger difficulties. The only concern is that of anxiety, and at present continued vulnerability to potential stress . . .He is a person of significant personal pride,

who has felt humiliated and diminished by these events, and he has experienced emotional discomfort to the extent that he has needed both psychotherapy and psychotropic medications to manage his symptoms. He also believes that his hypertension is associated with these events since it had not been detected before . . . Mr. Adams presents no danger to students, coworkers, himself, or others. He is fit to return to his duties as a school administrator or any other school-based assignment that may be contemplated . . . The only caveat is that, due to his anxiety and stress reaction, Mr. Adams would best be assigned to a supportive, lower-stress school environment." Even AACPS' medical evaluation concluded that Mr. Adams needed a reasonable accommodation.

20.  On August 4, 2010, Mr. Adams was transferred to J. Albert Adams Academy. He reported to work on August 5, 2010.[2] Yet AAPCS continued to engage in inappropriate and illegal medical inquiries, even though its own medical evaluation concluded that Mr. Adams was fit to perform his job functions with accommodation. Alex Szachnowicz, Chief Operating Officer, questioned Mr. Adams about his health during the first few weeks at J. Albert Adams Academy.

21.  Further, AACPS is applying gender stereotypes when implementing its leave policies. When Ms. Floyd-Cooper and Ms. Davis, the other two assistant principals and both female, used medical leave and maternity leave, AACPS did not retaliate or interfere with the leave. AACPS expects that women, not men, will need to care for themselves or others. Men, on the other hand, are expected to be "masculine" and work through any illness.

22.  Mr. Adams has always performed satisfactory work. The facts establish that any criticism of Mr. Adams is pretextual. Mr. Adams' exemplary performance record is strong evidence of pretext. Mr. Adams has received favorable evaluations, salary increases, bonuses,

---

[2] Mr. Adams' son was in the hospital on his scheduled day to return, so Mr. Adams returned the following day.

commendations, and awards throughout his 33-year career. Mr. Adams' Performance Evaluations rated him as "Outstanding" in 2000, 2008, 2009, and 2011 and "Excellent" in 2001, 2002, 2003, 2004, 2005, 2006, and 2007. In the 2006-2007 Teacher Perception Survey for MacArthur Middle School, Mr. Adams was described as someone who resolves problems "quickly & fairly," and, "This man is a great example of what a good impartial principal would be like. He always takes a thorough look at topics, and when needed gives constructive criticism, and never attacks. MacArthur would be a very different place with him as principal."

23. As a direct result of the discrimination and retaliation, Mr. Adams has experienced severe emotional distress. He has also incurred attorneys' fees and costs, and other damages, for all of which he should be compensated.

24. Defendant's acts of discrimination and retaliation were performed with malice and reckless indifference to Mr. Adams's protected civil rights.

25. AACPS's actions were intentional, willful, and wanton.

## **CLAIMS FOR RELIEF**

### Count I
### (Family Medical Leave Violation)

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint with the same force and effect as if set forth herein.

27. Plaintiff was a full-time employee who Defendant employed for more than one year.

28. In addition, Plaintiff Andrew Adams alleges that Defendant's unlawful interference and retaliation with his employment violates the laws of the Family and Medical Leave Act of 1993, 29 U.S.C. Sections 2601 et seq. justifying an award, inter alia, of back pay,

interest, special damages (if applicable), and any and all other damages that he is entitled to under law against Defendant.

### Count II
### (Title 20)

29. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28 of this Complaint with the same force and effect as if set forth herein.

30. Defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his disability and gender in violation of Title 20.

31. Defendant has retaliated against plaintiff and has denied him opportunities for employment on the basis of his having complained of discrimination in violation of Title 20.

32. The above acts and practices of the defendant constitute unlawful discriminatory employment practices within the meaning of Title 20.

33. Defendant's acts were with malice and reckless disregard for plaintiff's protected civil rights.

34. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

    a. Declaring that the acts and practices complained of herein are in violation of Title 20;

    b. Enjoining and permanently restraining these violations of Title 20;

    c. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

  d. Directing Defendant to place plaintiff in the position he would have occupied but for defendant's discriminatory and retaliatory treatment of him, and make him whole for all earnings he would have received but for defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pension, and other lost benefits;

  e. Awarding plaintiff compensatory and punitive damages;

  f. Awarding plaintiff the costs of this action together with reasonable attorneys' fees, as provided by Title 20;

  g. Directing Defendant to pay plaintiff compensatory damages and damages for his mental anguish and humiliation; and

  h. Granting such further relief as this Court deems necessary and proper.

### Count III
### (Intentional Infliction of Emotional Distress)

35. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 of this Complaint with the same force and effect as if set forth herein.

36. Defendant by its conduct has intentionally and recklessly caused plaintiff to suffer severe emotional distress.

37. Defendant's conduct was extreme and outrageous.

38. As a result of Defendant's conduct, plaintiff has suffered damages, including but not limited to severe emotional distress and loss of reputation.

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

  a. Directing Defendant to pay plaintiff compensatory and punitive damages for the injuries suffered as a result of defendant's tortious conduct.

## Count IV
### (Disability Discrimination Under the ADA)

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint with the same force and effect as if set forth herein.

40. Defendant has discriminated against plaintiff in the terms and conditions of his employment on the basis of his disability in violation of the ADA.

41. Defendant has retaliated against plaintiff and has denied him opportunities for employment on the basis of his having complained of discrimination in violation of the ADA.

42. The above acts and practices of the defendant constitute unlawful discriminatory employment practices within the meaning of the ADA.

43. Defendant's acts were with malice and reckless disregard for plaintiff's protected civil rights.

44. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

WHEREFORE, plaintiff prays that the Court:

a. Enter a money judgment representing compensatory damages, including lost wages, past and future wages, all other sums of money, including any and all benefits and any other employment benefits together with interest on said amounts;

b. For a money judgment representing punitive damages for defendant's willful violations of law;

c. For a money judgment representing prejudgment interest, if applicable;

d. Retain jurisdiction over this action until defendant has fully complied with the orders of this Court, and that this Court require defendant to file any and all reports necessary

and to supervise compliance with law that any and all matters related hereto be done in conformance with the applicable ADA provisions;

  e. For lost monies and damages pertaining to out-of-pocket expenses;

  f. For costs of suit, including an award of reasonable attorney's fees and expert fees; and

  g. For such other and further relief as may be just and proper.

## Count V
### (Negligent Retention and Supervision)

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 of this Complaint with the same force and effect as if set forth herein.

46. Defendant had a duty to exercise reasonable care in supervising and retaining employees. However, it failed to use reasonable care despite numerous warnings and complaints about misconduct.

47. The defendant breached that duty and the negligence of the defendant caused plaintiff to suffer damages.

WHEREFORE, plaintiff demands judgment against defendant as follows:

  a. For all compensatory and punitive damages with respect to his claims in an amount being just; and

  b. For any and all other equitable and legal relief to which plaintiff appears entitled.

## Count VI
### (Title VII)

48. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 47 of this Complaint with the same force and effect as if set forth herein.

49. In addition, Plaintiff alleges that Defendant unlawfully and discriminatorily denied Plaintiff his right to equal employment opportunity on account of his gender and said actions violate the provisions of Title VII.

WHEREFORE, plaintiff requests that this Court enter a judgment:

a. Declaring that the acts and practices complained of herein are in violation of Title VII;

b. Enjoining and permanently restraining these violations of Title VII;

c. Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

d. Directing defendant to place plaintiff in the position he would have occupied but for defendant's discriminatory treatment of him, and make him whole for all earnings he would have received but for defendant's discriminatory treatment, including, but not limited to, wages, pension, and other lost benefits;

e. Awarding plaintiff compensatory and punitive damages;

f. Awarding plaintiff the costs of this action together with reasonable attorneys' fees, as provided by Section 706(k) of Title VII, 42 U.S.C. Section 2000e-6(k);

g. Directing defendant to pay plaintiff compensatory damages and damages for his mental anguish and humiliation; and

h. For any and all other equitable and legal relief to which plaintiff appears entitled.

## Count VII
### (42 U.S.C. Section 1983)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 of this Complaint with the same force and effect as if set forth herein.

51. By discriminating against plaintiff in the terms and conditions of his employment, defendant has subjected plaintiff to sex discrimination in violation of the Fourteenth Amendment of the United States Constitution, as made actionable pursuant to 42 U.S.C. Section 1983.

52. At all times relevant to this action, the employees referenced above in paragraphs 1 through 25 were acting within the scope of their employment with AACPS and under color of state law.

53. At all times, AACPS maintained deficient policies, practices, customs and usages related to the supervision, monitoring, control and retention of personnel.

WHEREFORE, plaintiff prays that this Honorable Court:

  a. Empanel a jury to hear and decide all questions of fact;

  b. Award to plaintiff compensatory damages against the defendant;

  c. Award to plaintiff punitive damages against defendant for its malicious and spiteful pattern of discrimination;

  d. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter; and,

  e. Enter any other order the interests of justice and equity require.

## Count VIII
### (Maryland Declaration of Rights)

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53_ of this Complaint with the same force and effect as if set forth herein.

55. By discriminating against plaintiff in the terms and conditions of his employment, defendant has subjected plaintiff to sex discrimination in violation of Article 24 of the Maryland Declaration of Rights.

WHEREFORE, plaintiff prays that this Honorable Court:

a. Empanel a jury to hear and decide all questions of fact;

b. Award to plaintiff compensatory damages against the defendant;

c. Award to plaintiff punitive damages against defendant for its malicious and spiteful pattern of sexual discrimination; and

d. Enter any other order the interests of justice and equity require.

### REQUEST FOR JURY TRIAL

Plaintiff, pursuant to Maryland Rule 2-325, pray a trial by jury on all issues.

Respectfully submitted,

RIFKIN, LIVINGSTON, LEVITAN & SILVER, LLC

Joyce E. Smithey, Esq.
225 Duke of Gloucester Street
Annapolis, Maryland 21401
(410) 269-5066 (phone)
(410) 269-1235 (fax)

Attorney for Plaintiff, Andrew S. Adams

Date: 8/17/11