IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREW S. ADAMS                    *

            Plaintiff             *

        vs.                       *    CIVIL ACTION NO. MJG-11-2876

ANNE ARUNDEL COUNTY PUBLIC         *
SCHOOLS
            Defendant             *

*        *        *        *        *        *        *        *        *

MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant's Motion for Summary

Judgment [Document 45] and the materials submitted relating

thereto.   The Court has held a hearing and has had the benefit

of the arguments of counsel.


I.   BACKGROUND

Since 1979, Defendant Anne Arundel County Public Schools

("AACPS") has employed Plaintiff Andrew S. Adams ("Adams") in

various positions and at differing locations.   From 2003-2010,

Adams served as Assistant Principal at MacArthur Middle School

("MacArthur").

In the Second Amended Complaint ("SAC") [Document 25],

Adams alleges that AACPS engaged in a discriminatory and

retaliatory campaign against him.   According to Adams, this

campaign was based upon his disabilities (anxiety and stress

related disorders), his taking of medical leave under the Family

Medical Leave Act, and his gender, and culminated in his

reassignment to J. Albert Adams Academy ("JAA Academy").

The SAC asserts claims against AACPS in six Counts:

Count I:        Family Medical Leave Violation ("FMLA")

Count II:       Title 20 – State and Government Article of
                the Annotated Code of Maryland

Count III:      Intentional Infliction of Emotional Distress
                ("IIED")

Count IV:       Disability Discrimination – Americans with
                Disabilities Act ("ADA")

Count V:        Title VII

Count VI:       Maryland Declaration of Rights

AACPS filed a Motion to Dismiss [Document 26] seeking

dismissal of all claims.  On April 2, 2013, in the Memorandum

and Order Re: Motion to Dismiss ("Dismissal Decision") [Document

29], this Court dismissed completely all claims in Counts III

(IIED), V (Title VII), and VI (Maryland Declaration of Rights).

As to Counts I (FMLA), II (Title 20), and IV (ADA), the Court

held that:

        all claims in the remaining Counts (Counts
        I, II, and IV) are dismissed except the
        following:

        a.   The FMLA Claims based on the: (1)
             Reopening the Investigation; (2) Pre-
             Disciplinary Conference; (3) Written
             Reprimand; and (4) Reassignment of
             Employment.

    b.    The Disability Discrimination Claims based on the: (1) Written Reprimand and (2) Reassignment of Employment.

    c.    The Disability Retaliation Claims based on the: (1) Pre-Disciplinary Conference; (2) Written Reprimand; . . . (3) Reassignment of Employment [and (4) Reopening the Investigation].

Id. at 64-65.[1]

By the instant Motion, AACPS seeks summary judgment as to

---

[1]    In the Conclusion of the Dismissal Decision, the Court did not refer to the reopening of the investigation when discussing the disability retaliation claims. However, in the substantive discussion of the decision, the Court stated:

> In sum, the Court finds the SAC to present plausible claims that the following challenged actions are sufficiently adverse for purposes of Adams' discrimination and retaliation claims:

| Challenged Action | Discrimination Claims (Disability) | Retaliation Claims (Disability and FMLA) |
|---|---|---|
| Reopening the Investigation | | ✓ |
| Pre-Disciplinary Conference | | ✓ |
| Written Reprimand | ✓ | ✓ |
| Reassignment of Employment | ✓ | ✓ |

[Document 29] at 35. To avoid any issue by virtue of the difference between the Conclusion section of the Dismissal Decision and the "Challenged Action" chart, the Court's decision on the instant Motion for summary judgment is based upon a determination that all four of the challenged actions – not just three of the four – "are sufficiently adverse for purposes of Adams' [disability] retaliation claims."

all remaining counts and claims,[2] contending that "there is no
genuine dispute of material fact as to any remaining count of
the [Second Amended] Complaint."  [Document 45] at 1.


II.   UNDERLINE SUMMARY OF UNDISPUTED FACTS

A.   Incident with the Female Student

On January 19, 2010,[3] Adams had an interaction with a female
student in the hallway of MacArthur regarding the student's
cellphone.  After the incident, the student filed a Student
Incident Report claiming an improper physical interaction on
school grounds.  See [Document 45-3] at 17.

There is no dispute that the incident involved physical
contact between Adams and the student.[4]

---

[2]   In his Response, Adams contends that "AACPS has not moved
for summary judgment on Mr. Adams's FMLA interference claims."
[Document 54] at 35.  However, in its Motion AACPS states
"Defendant respectfully prays that this Honorable Court . . .
enters summary judgment as to all remaining counts of the Second
Amended Complaint."  [Document 45] at 1 (emphasis added).

[3]   All date references herein are to the year 2010 unless
otherwise indicated.

[4]   The exact extent of the physical contact between Adams and
the student is immaterial for purposes of the Court's decision.
However, by way of background, according to a witness account of
the incident, the witness heard the student yelling at Adams,
and when the student "started to flail her arms . . . Mr. Adams
raised his hands and used them to guide the [student's] forearms
downward."  [Document 45-3] at 21.  The female student claimed
that "Adams grabbed her, with two hands, just above her elbows
and pushed her against the wall."  Id. at 7.

B.   Physical Child Abuse Investigation

At a Multi-Disciplinary Committee meeting held on February 4, the Anne Arundel County Department of Social Services ("DSS") advised AACPS that "the allegations of physical child abuse against Mr. Adams were ruled out" as a result of the Child Protective Services ("CPS") investigation.  [Document 45-3] at 14.

The AACPS Office of Investigations interviewed Adams on February 24.  Adams, his then-attorney, an AACPS Senior Investigator, and the AACPS Supervisor of Employee Investigations were present.  [Document 56-1] at 1.  At that meeting, "Adams was informed that the investigation of [CPS] had ruled out child abuse."[5]  Id.

DSS formally notified Adams in writing of its finding in a letter dated March 19, which stated that DSS "ha[d] completed its [CPS] Intake Investigation" and that "the validity of the allegation of Child Physical Abuse . . . is Ruled Out."

---

[5]   According to Adams, the AACPS investigation was closed as of the February 24 interview when he was shown a single-page "Resolution Document" that referenced the February 4 meeting. See [Document 54] at 17-18.  Adams contends that AACPS reopened the investigation after February 24 – more specifically, after he notified AACPS on February 25 of his need for medical leave. Id. at 18.  AACPS disagrees, contending that the AACPS investigation did not close on February 24, but was ongoing, and that the child abuse investigation was independent of AACPS' investigation into Adams' compliance with school procedures. See, e.g., [Document 56] at 3-4.

[Document 54-2] at 8.


C.   Medical Leave

On February 25, Adams was diagnosed with extreme stress, elevated blood pressure, and anxiety.  [Document 25-2] at 1-2. The physician who treated Adams deemed him unable to work and recommended that he take medical leave from February 26 to March 2.  [Document 54-1] at 26.

Adams began seeing psychiatrist Dr. Lawrence Adler, MD in March.  On March 22, Dr. Adler wrote in a physician's note that Adams has "Acute Stress Disorder" and that "[h]e is unable to work currently and requires temporary medical leave."  [Document 25-6].  Dr. Adler filled out the Certification of Health Care Provider forms for Adams to take FMLA leave and estimated that the period of Adams' incapacity would last roughly six months, until August 22.  See [Document 45-6] at 8-11.  However, by July 21, Dr. Adler noted that "[Adams'] condition ha[d] improved" and that "[Adams was] able to return to employment."  Id. at 22.

While Adams was on medical leave, AACPS required him to undergo three evaluations with psychologist Dr. Anthony B. Wolff, Ph.D. to assess his fitness to perform his duties at work.  Id. at 19.

D.   <u>Pre-Discipline Conference and Written Reprimand</u>

While Adams was on medical leave, AACPS notified him in writing that "a pre-discipline conference" had been scheduled "to discuss allegations [relating to the January 19 incident, specifically] that [Adams] grabbed a student by the arms, shook her, and pinned her up against the wall." [Document 25-8] at 1. The letter informed Adams that he would "be advised as to the procedures to be followed" after the conference and that he could "have an attorney or association representative present." <u>Id.</u>  Adams attended the pre-discipline conference on May 10.[6] [Document 45-6] at 13.

On May 24, AACPS "formally reprimanded" Adams for the January 19 incident in a letter signed by the Deputy Superintendent of Schools.  <u>Id.</u>  The written reprimand stated that "on January 19, while attempting to obtain a cell phone from a student, [Adams] engaged in physical contact by using a technique that escalated a situation that could have been handled differently."  <u>Id.</u>  AACPS concluded that Adams' "actions were unacceptable" and that his "conduct must change immediately."  <u>Id.</u>

---

[6]   AACPS informed Adams of the pre-discipline conference in a letter dated April 12.  [Document 25-8] at 1.  Although the letter stated that the conference would take place on May 6, the written reprimand issued thereafter refers to the conference as being held on May 10.  <u>See</u> [Document 45-6] at 13.

E.   Reassignment and Transfer to JAA Academy

In the March 22 physician's note, Dr. Adler wrote that when Adams "is stabilized, he will require assignment to another school [because h]is current placement is a trigger for panic attacks and other manifestations of his [Acute Stress Disorder]." Id. at 6.  In the FMLA forms, Dr. Adler wrote that Adams "must be reassigned to another location." Id. at 10.

Adams was informed of his reassignment in a letter from AACPS dated June 2.  In that letter, the AACPS Director of Human Resources wrote that Adams was being reassigned from Assistant Principal at MacArthur to Assistant Principal at JAA Academy. Id. at 17.  JAA Academy is a small alternative school for students with behavioral problems.  The student body is less than 10% of that at MacArthur (80 to 120 at JAA Academy compared with 1,050-1,110 at MacArthur), the staff to student ratio is higher, and there is more support staff.  See Adams Dep. 121:10-16 [Document 45-7]; Liverman Dep. 103:3-105:9 [Document 45-8].

In the fitness for duty evaluation report dated July 28, Dr. Wolff concluded that although "[Adams] is fit to return to his duties . . . due to his anxiety and stress reaction, Mr. Adams would best be assigned to a supportive, lower-stress school environment." [Document 45-6] at 27.  Dr. Wolff noted that "Mr. Adams is not averse to the possibility of being

8

assigned to a specialized program such as the J. Albert Adams
Academy, which has been mentioned as a possibility."  Id.

The June 2 letter indicated that Adams' salary would be
redlined for two years - meaning that it would remain unchanged
until June 2012 - at $113,556, in accordance with the agreement
between the teachers' union and AACPS.  Id. at 17; see also
Adams Dep. 130:4-132:15 [Document 54-1]; Liverman Dep. 102:4-14
[Document 54-9].  On June 23, 2012, Adams' yearly salary as
Assistant Principal at JAA Academy was lowered by $1,031.00 -
from $113,556 to $112,525 - due to an adjustment based on the
population of JAA Academy.  [Document 54-9] at 55; Liverman Dep.
102:15-18 [Document 54-9].  As a result of the reassignment,
Adams was no longer eligible for the yearly bonus(es) he had
received while at MacArthur.  See Adams Dep. 129:8-130:3
[Document 54-1].

Since returning to work in the summer of 2010, Adams "has
held the position of Assistant Principal at the J. Albert Adams
Academy."  [Document 45-6] at 3.  He "has received overall
ratings of 'Outstanding' on his annual evaluations" and "has not
requested reassignment to another position."  Id.


III. SUMMARY JUDGMENT STANDARD

A motion for summary judgment shall be granted if the

9

pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  The Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order "[t]o defeat a motion for summary judgment, the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her." Mackey v. Shalala, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole,
which are designed 'to secure the just, speedy and inexpensive
determination of every action.'"  Celotex, 477 U.S. at 327
(quoting Fed. R. Civ. P. 1).


IV.  DISCUSSION

    Pursuant to the Court's Dismissal Decision, Adams'
remaining claims are:

| Claim | Challenged Actions |
|---|---|
| Count I - FMLA Interference | 1.  Reopening the investigation<br>2.  Pre-discipline conference<br>3.  Written reprimand<br>4.  Reassignment of employment |
| Count I - FMLA Retaliation | 1.  Reopening the investigation<br>2.  Pre-discipline conference<br>3.  Written reprimand<br>4.  Reassignment of employment |
| Counts II, IV -  Disability Discrimination | 1.  Written reprimand<br>2.  Reassignment of employment |
| Counts II, IV -  Disability Retaliation | 1.  Reopening the investigation<br>2.  Pre-discipline conference<br>3.  Written reprimand<br>4.  Reassignment of employment |

See [Document 29] at 35.

    Each of the remaining claims made by Adams has, as an
element, that he suffered an adverse employment action.[7]  See

---

[7]    As the Court discussed in the Dismissal Decision, an FMLA
interference claim does not necessarily require that there be an
adverse employment action.  See [Document 29] at 15 n.10.

Edmonson v. Potter, 118 F. App'x 726 (4th Cir. 2004) (disability discrimination); Rhoads v. F.D.I.C., 257 F.3d 373 (4th Cir. 2001) (disability retaliation); Cline v. Wal-Mart Stores, Inc., 144 F.3d 294 (4th Cir. 1998) (FMLA retaliation).

Adams contends that all four actions qualify as "adverse employment actions" for purposes of his FMLA and disability claims.  AACPS disagrees with Adams' version of the facts as to the alleged reopening of the investigation and with Adams' legal arguments as to the reassignment to JAA Academy.

A.   Investigation into the January 19 Incident

The parties agree "that the key issue of the entire case is whether the disciplinary investigation was reopened after [Adams] began taking medical leave."  [Document 56] at 1; see also [Document 54] at 16.

---

However, in the SAC, Adams rests his FMLA interference claims on alleged "adverse employment actions" by AACPS.  See, e.g., SAC ¶ 13 ("The reopening of the investigation constitutes an adverse employment action, an element of Mr. Adams' FMLA interference claim.").  Similar to the conclusion reached in the Dismissal Decision, the Court need not "determine whether the theory under which Adams' [sic] contends AACPS 'interfered' with his FMLA prescriptive rights requires a demonstration of an 'adverse employment action,'" [Document 29] at 44, because Adams bases his FMLA interference claims upon allegations of such actions – the same actions alleged to qualify as adverse employment actions for purposes of the retaliation claims.  See, e.g., [Document 54] at 35 ("[S]imilarly to Mr. Adams's FMLA retaliation claim, genuine disputes of material remain" as to his FMLA interference claim.).

The Court ruled in the Dismissal Decision - accepting Adams' factual allegations as true - that "the reopening of the investigation amounts to a plausible claim of 'adverse action' capable of supporting Adams' retaliation claims." [Document 29] at 27-38.  However, if the investigation remained open – i. e., was not closed as Adams alleges - then it could not have been reopened, and therefore, there can be no adverse employment action based upon a non-occurring reopening.

### 1.   Parties' Arguments

According to Adams, the investigation was closed as of the February 24 interview.  Adams contends that at the interview, he was shown a "Resolution Document" that referenced the February 4 Multi-Disciplinary Committee meeting, at which AACPS was informed that DSS had ruled out physical child abuse allegations, and that was signed "by two people from DSS and three people from AACPS," including the Deputy Superintendent of Schools.  [Document 54] at 20-21.  Adams argues that the Resolution Document and the subsequent decision to allow him to return to MacArthur "signified that Mr. Adams had been cleared of the allegations against him" and that the investigation was closed.  Id.  Adams requested a copy of the Resolution Document at the February 24 interview and during discovery.  However,

13

Defendants deny that there ever was a "Resolution Document" as
described by Adams.

Adams contends that the investigation was closed before,
and reopened after, he took medical leave.  At the hearing on
the instant Motion, counsel for Adams explained that Adams'
position is the investigation was reopened sometime after
February 24 – more specifically, after Adams notified AACPS of
his need for medical leave on February 25 – but before April 12
– the date Adams was notified in writing of the pre-discipline
conference.

AACPS contends that the AACPS investigation did not close
either on February 4 - when AACPS was notified at the Multi-
Disciplinary Committee meeting that DSS had ruled out
allegations of physical child abuse - or on February 24 - when
Adams was informed of that outcome at the AACPS Office of
Investigations interview.  According to AACPS, the investigation
into whether Adams complied with MacArthur policy during the
January 19 incident – and whether he would be disciplined for
his conduct – continued without interruption until April 8, when
the AACPS investigation report was finalized.  <u>See</u> [Document 45-
1] at 5-6.

AACPS disputes Adams' allegation that a Resolution Document
exists and contends that the only document relating to the

14

February 4 meeting that AACPS had in its possession at the time
of the February 24 interview was the "Decision of Team Members"
form from the Multi-Disciplinary Case Consultation Team.   See
Czach 2d Aff. at 1-4 [Document 56-1].   AACPS contends that after
the investigation report was finalized on April 8, Adams was
informed of the pre-discipline conference, which he attended on
May 10, and that all of these events culminated in the May 24
written reprimand.


    2.   The Evidence

In the summary judgment context, Adams as the non-moving
party, is "entitled . . . to have the credibility of his
evidence as forecast assumed, his version of all that is in
dispute accepted, all internal conflicts in it resolved
favorably to him, the most favorable of possible alternative
inferences from it drawn in his behalf; and finally, to be given
the benefit of all favorable legal theories invoked by the
evidence so considered."   Charbonnages de France v. Smith, 597
F.2d 406, 414 (4th Cir. 1979).   However, the Court concludes
that no reasonable jury could find that Adams suffered an
adverse employment action because Adams has provided no evidence
adequate to support a finding that the investigation had been
closed as of February 24 and was later reopened.

In his deposition taken in August 2013, Adams conceded that he was not aware whether the investigation into the January 19 incident was continuing as of February 24.  See Adams Dep. 106:4-5 [Document 54-1] ("I do not know the inner workings of the Board of Education . . . .").  However, three months later Adams filed an affidavit that is not consistent with his deposition testimony.  In an affidavit dated November 11, 2013 – the day he filed his Response to the instant Motion – Adams stated his purported recollection that the Resolution Document shown to him at the February 24 meeting "indicat[ed] a unanimous decision by both DSS and AACPS to . . . close their investigations."  Adams Aff. ¶ 4 [Document 54-2].

The only document in evidence that could be the basis of Adams' alleged recollection is the Decision of Team Members form, a document that does reflect the closing of an investigation – the closing of the CPS child abuse investigation through DSS.  There is no evidence indicating that there was any document reflecting a pre-February 24 closing of the separate AACPS conduct investigation.  Moreover, there is ample evidence to support, and no evidence to refute, the defense position that the AACPS investigation remained open during the period from February 24 to April 12.

16

The Employee Case Management ("ECM")[8] Contact Log for the January 19 incident reflects that Adams' case was discussed at ECM meetings seven times between January 25 and April 6.  See [Document 54-10] at 2.  Further, between February 4 – when the Multi-Disciplinary Committee ruled out physical child abuse – and February 24 – when Adams was interviewed – the ECM team discussed Adam's case twice.

The remaining portions of the ECM Contact Log that the parties have placed on the record[9] provide additional support for the conclusion that the AACPS investigation was ongoing, and no support for the opposite conclusion:

| | |
|---|---|
| 2/4/2010 | Mult-D ruled out physical abuse |
| 2/16/2010 | interview scheduled for 2/24 |
| 2/22/2010 | following interview discuss with [Deputy Superintendent] |
| 2/24/2010 | Interviewed Adams today. Completing written report |
| 3/23/2010 | Investigation report completed |
| 3/29/2010 | once revisions to report are complete bring in for pre- |

---

[8]    ECM is a group of individuals within AACPS, headed by the Deputy Superintendent of Schools, that looks into complaints against AACPS employees and "tr[ies to] make appropriate decisions."  Liverman Dep. 20:4-22:4 [Document 54-9].
[9]    The bottom of the first page of the ECM Contact Log on the record ends with an entry for May 11 when Adams' then-attorney requested a copy of the un-redacted AACPS investigation report.

17

|           | discipline                                      |
|-----------|-------------------------------------------------|
| 3/31/2010 | Received investigation report from DSS" ECM Contact Log. |
| 4/6/2010  | schedule pre-discipline once report is final    |
| 4/8/2010  | Report complete - Pre-discipline scheduled      |

Id.

The April 8 AACPS Investigative Report explains the ECM Contact Log entries in more depth.  It states that "AACPS was advised on February 4, 2010, at a Multi-Disciplinary Committee meeting . . . that, based upon the CPS investigation, the allegations of physical child abuse against Mr. Adams were ruled out." [Document 45-3] at 14 (emphasis added).  However, the report also states that "[d]uring the AACPS investigation of the incidents, [evidence] support[s] the fact that Mr. Adams did engage in physical contact with [the female student]."[10]  Id. (emphasis added).  Like the ECM Contact Log, the AACPS Investigative Report indicates that AACPS continued to investigate Adams' conduct during the January 19 incident, even

---

[10]   The report concludes that "sufficient evidence does exist to support the allegation that Mr. Adams used physical contact with [the female student that,] coupled with Mr. Adams' technique of guiding [the female student] to the wall, escalated the situation and exacerbated her behavior." [Document 45-3] at 15 (emphasis added).

though he had been cleared of physical child abuse allegations.[11]

Moreover, the July 28 fitness for duty evaluation report from Dr. Wolff reflects the understanding that AACPS continued its investigation after the DSS investigation was concluded. See [Document 54-1] at 37. ("Background information reflects a history of some type of confrontation with a student on January 19, 2010, resulting in an allegation against Mr. Adams for physical child abuse.  The incident was evaluated by DSS and was ruled out in terms of abuse.  Disciplinary and administrative processes continued within AACPS."  (emphasis added)).

In responding to the instant Motion, the only evidence Adams has produced to support his position that the AACPS investigation was closed and reopened is his own post-deposition

---

[11]    According to the Deputy Superintendent of Schools, it is not uncommon for AACPS to continue its investigation into an incident after DSS completes its CPS investigation.

> Q.   And does the school system always investigate claims regardless of the CPS outcome?

> A.   Well, not always.  Sometimes, as a result of a CPS investigation then, okay, we may decide, all right [sic], based on that we are simply going to – this is going to be our decision.  We are going to close it and maybe send the person a resolution letter.  That can happen and in some cases that's not – we continue an investigation.

Liverman Dep. 35:17-36:21 [Document 54-9].

affidavit.  In this document, he "revises" his deposition testimony in which he testified that he was not aware whether the investigation into the January 19 incident was continuing as of February 24.[12]  However, in his affidavit he states that on February 24 he was shown the purported Resolution Document indicating the decision by DSS <u>and AACPS</u> to close their investigations.  If Adams' affidavit statement is true, then he did know as of the time of his deposition that the AACPS investigation was closed as of February 24.  Adams' affidavit cannot be relied upon to create a genuine issue of material fact to avoid summary judgment.

As stated by the United States Court of Appeals for the Fourth Circuit in <u>Halperin v. Abacus Tech. Corp.</u>:

> It is well established that "[a] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct. <u>Barwick v. Celotex Corp.</u>, 736 F.2d 946, 960 (4th Cir. 1984); <u>see also Rohrbough v. Wyeth Labs., Inc.</u> 916 F.2d 970, 975-76 (4th Cir. 1990) (disregarding affidavit of witness that contradicted witness' own prior deposition testimony).

128 F. 3d 191, 198 (4th Cir. 1997) (alteration in original) (citation omitted), <u>abrogated on other grounds</u> by <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462 (4th Cir. 1999).

---

[12]   <u>See</u> Adams Dep. 106:4-5 [Document 54-1] ("I do not know the inner workings of the Board of Education . . . .").

Adams has not presented evidence adequate to support a finding that AACPS is wrong when it contends that that the AACPS investigation into the January 19 incident did not conclude when Adams was informed of the Multi-Disciplinary Committee decision at his February 24 interview, but continued without interruption for at least another five weeks until April 8 when the investigative report was finalized, and that the case against Adams ultimately closed with the May 24 written reprimand.

Accordingly, the Court shall grant summary judgment to AACPS on all remaining claims in Counts I, II, and IV based on the alleged reopening of the investigation.


B.    Pre-Discipline Conference and Written Reprimand

In the Dismissal Decision, this Court left pending: (1) the FMLA claims and the disability retaliation claims based on the May 10 pre-discipline conference and (2) the FMLA claims and disability discrimination and retaliation claims based on the May 24 written reprimand.  See [Document 29] at 64-65.  However, the claims were dependent upon a link between the alleged reopening of the investigation and the pre-discipline conference and written reprimand that followed.  For example, the Dismissal Decision states that the pre-discipline conference could "constitute[] an adverse action for purposes of Adams'

retaliation claims" because "an order to a school official to
attend a 'pre-disciplinary meeting' . . . <u>for purposes of
discussing allegations previously found to be without grounds</u>"
could deter protected activity.[13]  [Document 29] at 29 (emphasis
added).

Adams has not alleged that the pre-discipline conference
and written reprimand were adverse employment actions other than
by virtue of their connection to the reopened investigation.
Adams alleges that the "[t]he <u>sole focus</u> of the [pre-discipline]
conference was the <u>previously resolved</u> incident from January
2010, an incident in which Mr. Adams was previously cleared of
any wrongdoing."  SAC ¶ 16.b. (emphasis added).  Regarding the
written reprimand, Adams alleges that he "received a written
letter disciplining him for the January 19, 2010 incident . . .
<u>after [he] was already cleared</u>."  <u>Id.</u> (emphasis added).
Moreover, if the AACPS investigation was ongoing, then the pre-
discipline conference was a normal part of the process.[14]  And,

_____

[13]  As to the written reprimand, the Court observed that
"[a]fter reopening the investigation and holding the pre-
disciplinary conference, AACPS issued a formal written reprimand
to Adams" and concluded that the written reprimand was
sufficient to support an adverse employment action for
discrimination and retaliation claims.  [Document 29] at 29
(emphasis added).
[14]  At the Motion hearing, counsel for Adams suggested that
even if the investigation was ongoing, the pre-discipline
conference and written reprimand could still qualify as adverse
employment actions.  However, as discussed <u>supra</u>, the SAC bases

Adams has made no showing that the written reprimand was based upon any actionable occurrence.

Thus, because Adams cannot prove that the investigation was reopened, neither the pre-discipline conference nor the written reprimand qualifies as an adverse employment action because those challenged actions resulted directly from an ongoing investigation into Adams' compliance – or lack thereof – with MacArthur procedures.

Accordingly, the Court shall grant summary judgment to AACPS on all remaining claims in Counts I, II, and IV based on the pre-discipline conference and the written reprimand.

C.    Reassignment to JAA Academy

When Adams returned from medical leave in the summer of 2010, he was reassigned from his position as an Assistant Principal at MacArthur to an Assistant Principal at JAA Academy. Adams contends that the reassignment qualifies as an adverse employment action for purposes of his FMLA and disability claims because he did not receive the same rate of pay after the transfer and because JAA Academy is arguably a more stressful

---

the claims regarding the pre-discipline conference and reprimand on the reopening of the investigation.  The SAC does not allege – nor did counsel for Adams contend until the Motion hearing – that the pre-discipline conference and written reprimand independently qualified as adverse employment actions.

environment than MacArthur.  See [Document 54] at 32-34.  Adams
also contends that any justification for the reassignment
proffered by AACPS is pretextual.  See id. at 26-28, 32-35.


    1.   Legal Principles

    To establish a prima facie case of retaliation based on his
disability and/or exercise of FMLA rights, Adams must show that:

        (1)   he engaged in a protected activity;

        (2)   AACPS acted adversely against him,
              here, by reassigning him to JAA
              Academy; and

        (3)   the protected activity was casually
              connected to AACPS' adverse action of
              reassigning Adams.

Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001); see also
Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th
Cir. 2006).  After Adams establishes a prima facie case of
retaliation, AACPS "then has the burden 'to rebut the
presumption of retaliation by articulating a legitimate
nonretaliatory reason'" for the reassignment.  Rhoads, 257 F.3d
at 392 (citation omitted); see also Yashenko, 446 F.3d at 551.
If AACPS can articulate a legitimate nonretaliatory reason, then
Adams "'must demonstrate that the proffered reason is a pre-text

for forbidden retaliation.'"[15] <u>Rhoads</u>, 257 F.3d at 392 (citation omitted); see also <u>Yashenko</u>, 446 F.3d at 551.

As the Court noted in its Dismissal Decision, the scope of employment actions adequate to be adverse for purposes of a retaliation claim is somewhat broader than the scope for a claim of substantive discrimination.  <u>See</u> <u>Thompson v. N. Am. Stainless, LP</u>, 131 S. Ct. 863, 867-68 (2011).  The Supreme Court has stated that to satisfy the "adverse action" element of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006) (citation omitted).

The "reassignment of job duties is not automatically actionable.  Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"  <u>Id.</u> at 71 (citation omitted).  The Fourth Circuit has indicated that a reassignment of employment that

---

[15]   Disability discrimination claims are evaluated under the same burden-shifting framework.  <u>See</u> <u>Perry v. Computer Sciences Corp.</u>, 429 F. App'x 218, 219-20 (4th Cir. 2011) (per curiam).

results in a decrease in pay or benefits <u>could</u> qualify as an
adverse employment action.  <u>Cf.</u> <u>Boone v. Goldin</u>, 178 F.3d 253,
255 (4th Cir. 1999) (concluding that transfer of plaintiff's
employment was not an adverse employment action because
plaintiff "did not allege . . . decrease in pay or benefits"),
<u>abrogation on other grounds recognized by</u> <u>Muldrow v. Blank</u>, No.
PWG-13-1200, 2014 WL 938475 (D. Md. Mar. 10, 2014).  However,
the Fourth Circuit does not appear to have spoken on the issue
of whether a reassignment of employment that results in lower
pay is <u>per se</u> an adverse employment action.  But <u>see</u> <u>Hinson v.
Clinch Cnty., Georgia Bd. of Educ.</u>, 231 F.3d 821, 829 (11th Cir.
2000) (stating that "[t]ransferring an employee to a job with
lower pay is an adverse employment action" and concluding that
had a proposed transfer been effectuated, it would have been an
adverse employment action because the transfer involved
reassignment from a principal position to an administrative
position and a salary cut of $4,000 a year).

    2.   <u>Prima Facie Case</u>

To establish a <u>prima facie</u> case of retaliation, Adams must
show that:

    (1)  he engaged in a protected activity;

    (2)  AACPS acted adversely against him,
         here, by reassigning him to JAA

Academy; and

(3)   the   protected   activity   was   casually
      connected   to   AACPS'   adverse   action   of
      reassigning Adams.

See Rhoads v. F.D.I.C., 257 F.3d 373, 392 (4th Cir. 2001).

Adams unquestionably engaged in a protected activity.   The
Court will assume that a jury could find the requisite causal
connection.   However, there is an issue as to whether there was
an adverse employment action.

Adams' medical provider, Dr. Adler, and the AACPS
psychologist, Dr. Wolff, requested his reassignment from
MacArthur to another, less stressful school.   Adams was aware
that JAA Academy was a possibility for the reassignment.   See
[Document 45-6] at 6, 10, 27.   Adams retained the same position
– Assistant Principal – after the reassignment.   Although his
salary was lowered, it remained the same for two years following
the reassignment and was lowered only by $1,000 per annum and
only as a result of the bargaining agreement in effect between
the teachers' union and AACPS that determines salaries based on
schools' populations.[16]

---

[16]   Adams contends that the reassignment to JAA Academy made
him ineligible to receive certain bonuses and that JAA Academy
"has all the criteria to be considered a school with children at
risk," [Document 54] at 36, but according to Adams' own
allegations, one of the bonuses he received while at MacArthur
was based on that school's "at risk" classification.   See SAC ¶
20 ("The transfer also made him ineligible for his yearly $2,000

Analyzing the available evidence under the "reasonable person" standard outlined by the Supreme Court in <u>Burlington</u>, the Court is doubtful whether a jury properly could conclude that a reasonable person in Adams' position would find the reassignment to JAA Academy to be an adverse employment action. However, the Court will assume for instant purposes that the reassignment qualifies as an adverse employment action.

### 3.   <u>Non-Retaliatory Purpose and Pretext</u>

Once a plaintiff establishes a <u>prima facie</u> case of retaliation, the defendant "then has the burden 'to rebut the presumption of retaliation by articulating a legitimate nonretaliatory reason'" for the reassignment.  <u>Rhoads</u>, 257 F.3d at 392 (citation omitted).  "If the [defendant] does so, the plaintiff "'must demonstrate that the proffered reason is a pre-text for forbidden retaliation.'"  <u>Id.</u> (citation omitted).

AACPS unquestionably has articulated a legitimate nonretaliatory reason for reassigning Adams to JAA Academy – medical professionals advised a reassignment to accommodate Adams' anxiety and stress disorders.  <u>See</u> [Document 45-1] at 10.

Adams has not presented evidence adequate to support a finding that the articulated reason is a pretext for

bonus for working at a school 'at-risk.'").

retaliation.

"To show pretext, the plaintiff must show that the
defendant's reason is 'unworthy of credence' or offer other
forms of circumstantial evidence demonstrating retaliation."
Perry v. Peters, 341 F. App'x 856, 858 (4th Cir. 2009).  "One
method of proving pretext is to show that the employer's
proffered explanation had no basis in fact."  Smith v. Allen
Health Sys., Inc., 302 F.3d 827, 834 (8th Cir. 2002).

Adams has presented no evidence to support a finding that
that AACPS' proffered reason for the reassignment – suggestions
from medical professionals – is unworthy of credence and is a
pretext for retaliating against him on the basis of his
disability and/or his decision to exercise his FMLA rights.  The
evidence, indeed, overwhelmingly establishes the veracity of
AACPS' articulation.

Adams own medical advisor, Dr. Adler, wrote in the FMLA
forms that Adams "must be reassigned to another location."
[Document 45-6] at 10.  In the fitness for duty evaluation
report, Dr. Wolff wrote that "Adams would best be assigned to a
supportive, lower-stress school environment" and that "Adams is
not averse to the possibility of being assigned to a specialized
program such as [JAA] Academy, which has been mentioned as a
possibility."  Id. at 27.  AACPS then reassigned Adams to a

school with a significantly smaller student body, a higher staff to student ratio, and more support staff.

The fact that AACPS reportedly did not look to see if there were job openings for Adams at schools other than JAA Academy, see Liverman Dep. 103:8-20 [Document 45-8], does not in any way suggest that the decision to reassign Adams to JAA Academy based on the advice of medical professionals was either discriminatory or a pretext for retaliation.[17]  Adams contends that because JAA Academy is a school for children with behavioral problems, it is arguably, despite its smaller size and more favorable staff to student ratio, a more stressful work environment.  However, he has presented no evidence – other than his own affidavit and deposition – to support this assertion.

Accordingly, the Court shall grant summary judgment to AACPS on all remaining claims in Counts I, II, and IV based on the reassignment to JAA Academy.

---

[17]    While the failure to consider alternative assignments with equivalent pay might contribute to the reassignment being an adverse employment action, it certainly does not indicate that AACPS' proffered reason for the reassignment was pretextual.

V.    <u>CONCLUSION</u>

For the foregoing reasons:

    1.    Defendant's Motion for Summary Judgment [Document 45] is GRANTED.

    2.    Judgment shall be entered by separate Order.

SO ORDERED, on <u>Tuesday, June 3, 2014</u>.


                                          _____/s/_____
                                          Marvin J. Garbis
                                United States District Judge